Argued and submitted November 26, 1980,
vacated and remanded November 16, 1981

STATE OF OREGON,
*Respondent,*

*v.*

THOMAS JUAN JONES,
*Appellant.*

(Nos. C 80-01-30122, C 80-02-30658, CA 17791)

635 P2d 1386

David L. Slader, Portland, argued the cause and filed the briefs for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief

were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant was charged with eight separate crimes arising out of a single incident. The parties stipulated to admission of the police reports of the incident, and the trial to the court proceeded on defendant's plea of not responsibile because of a mental disease or defect. He was found not responsible and dangerous and was committed to the jurisdiction of the Psychiatric Security Review Board for a period of 45 years. The sole issue is the length of the commitment.[1] Defendant contends certain of the charges should have been "merged" for the purpose of determining the commitment period. The state concedes, correctly, that certain of the charges should have been merged but disagrees with defendant's contentions regarding merger of the other charges.

The stipulated facts indicate the following events occurred, resulting in the eight charges.

Defendant, in the company of two accomplices, went to the home of the victim, Timothy Goldhammer, in the early morning hours. Co-defendant Arthur Scovell, who knew the victim, remained in the car. Defendant and a juvenile companion knocked on the door and asked Goldhammer if they could use the telephone. When Goldhammer opened the door, they burst in with guns drawn, handcuffed the victim and ransacked the house, collecting many items of personal property. They then put the victim in his own car and drove to Sawyers Super Little Market, which Goldhammer managed. At gunpoint they forced Goldhammer to open the safe and took the money that was in the safe, as well as cigarettes from the shelves of the market. They drove the victim back to his residence, tied

---

[1] ORS 161.327(1) provides:

"Following the entry of a judgment pursuant to ORS 161.319, if the court finds by a preponderance of the evidence that the person is affected by mental disease or defect and that he presents a substantial danger to himself or others that requires that the person be committed to a state mental hospital designated by the Mental Health division or conditionally released, the court shall order him placed under the jurisdiction of the Psychiatric Security Review Board for care and treatment. The period of jurisdiction of the board shall be equal to the maximum sentence the court finds the person could have received had he been found responsible."

him up, removed the property they had previously collected and then left.

The eight charges are reflected in a four count indictment and a four count information of felony as follows: *Indictment:* Count I, robbery in the first degree, alleging robbery while armed of Goldhammer in his residence; Count II, unauthorized use of a vehicle, alleging use of the victim's automobile; Count III, conspiracy to commit robbery in the first degree, alleging robbery while armed at the market; Count IV, conspiracy to commit burglary in the first degree, relating to the unlawful entry of Goldhammer's residence with intent to commit theft. *Information of felony:* Count I, burglary in the first degree, alleging unlawful entry of Goldhammer's residence with intent to commit theft and kidnapping; Count II, kidnapping in the second degree, alleging kidnapping of Goldhammer by removing him from his residence; Count III, robbery in the first degree, alleging robbery of the market; Count IV, burglary in the second degree, alleging unlawful entry of the market with intent to commit theft.

In determining the period of commitment, the court concluded defendant would have been convicted and sentenced for burglary in the first degree on the basis of the unlawful entry of Goldhammer's residence, robbery in the first degree, based on the robbery of the victim while in his home, and burglary in the second degree resulting from the unlawful entry of the market. The court ruled the remaining five charges were merged.

■ The state agrees with defendant, as do we, that the crimes of robbery in the first degree of Goldhammer at his residence and the burglary of Goldhammer's residence should be merged. Defendant agrees that the state, on resentencing, should have the option on which of these two charges the commitment period should be based.

■ The state does not agree with defendant's second contention that the burglary of the market should merge with the burglary involving Goldhammer's residence. Defendant contends that, although the two burglaries involved separate entries of separate buildings, the entries were part of a common purpose to rob Goldhammer of property or money to which he had access. He argues his

purpose was not to commit two burglaries but to commit one robbery. This single robbery was merely carried out in two locations, he contends. He is wrong. There was a completed burglary of Goldhammer's home when the defendant unlawfully entered and committed robbery of Goldhammer. There was a separate burglary of the market when the defendant unlawfully entered the market and committed a robbery. The property taken in that latter robbery was not Goldhammer's. There were two separate burglaries.

In *State v. Casey,* 4 Or App 243, 478 P2d 414 (1970), we held the defendant could be convicted and sentenced for two separate burglaries when he unlawfully entered and stole property from two businesses located in one building. The rationale of *Casey* is applicable to this case. We conclude the burglary of the market does not merge with the burglary of the victim's residence.

The commitment order is vacated, and the case is remanded for redetermination of the maximum period of defendant's commitment to the Psychiatric Security Review Board.